UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

ISHMAEL GUILFUCCI,

    Plaintiff,

v.                                  CASE No. 8:11-CV-1815-T-TGW

MICHAEL J. ASTRUE,
Commissioner of Social Security,

    Defendant.

_____

ORDER
==========

The plaintiff in this case seeks judicial review of the denial of his claims for Social Security disability benefits and supplemental security income payments.* Because the decision of the Commissioner of Social Security is supported by substantial evidence and contains no reversible error, the decision will be affirmed.

I.

The plaintiff, who was twenty-five years old at the time of the administrative hearing and who has a special high school diploma, has no

---

*The parties have consented in this case to the exercise of jurisdiction by a United States Magistrate Judge (Doc. 15).

work history. He filed claims for disabled adult child's benefits and supplemental security income payments, alleging that he became disabled due to mild retardation and slow learning disability (Tr. 119). The claims were denied initially and upon reconsideration.

The plaintiff, at his request, then received a <u>de</u> <u>novo</u> hearing before an administrative law judge. The law judge found that the plaintiff has severe impairments of "mild retardation but highly functioning and obesity" (Tr. 31). He concluded that these combinations of impairments did not meet, or equal, the requirements of an impairment in the Listing of Impairments (Tr. 32). He determined further that the plaintiff had the capacity to perform work at all exertional levels but had the limitations that he "can only carry out very simple, routine repetitive instructions, using very simple judgment and with simple changes in work setting and not involving reading or math calculations" (Tr. 33). Based upon the testimony of a vocational expert, the law judge concluded that, with these limitations, there are jobs that exist in significant numbers in the national economy that the plaintiff can perform, such as small parts assembler, hand packer, and laundry worker (Tr. 37). Accordingly, the law judge decided that the plaintiff was not disabled. The

Appeals Council let the decision of the law judge stand as the final decision of the Commissioner.

II.

A. In order to be entitled to Social Security disability benefits and supplemental security income, a claimant must be unable "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which ... has lasted or can be expected to last for a continuous period of not less than twelve months." 42 U.S.C. 423(d)(1)(A), 1382c(a)(3)(A). A "physical or mental impairment," under the terms of the Social Security Act, is one "that results from anatomical, physiological, or psychological abnormalities which are demonstrable by medically acceptable clinical and laboratory diagnostic techniques." 42 U.S.C. 423(d)(3), 1382c(a)(3)(D). The Commissioner acknowledges that these principles apply to the plaintiff's claim for disabled adult child's benefits (Doc. 17, p. 3). See 20 C.F.R. 404.350(a)(5).

A determination by the Commissioner that a claimant is not disabled must be upheld if it is supported by substantial evidence. 42 U.S.C. 405(g). Substantial evidence is "such relevant evidence as a reasonable mind

might accept as adequate to support a conclusion." Richardson v. Perales, 402 U.S. 389, 401 (1971), quoting Consolidated Edison Co. v. NLRB, 305 U.S. 197, 229 (1938). Under the substantial evidence test, "findings of fact made by administrative agencies ... may be reversed ... only when the record compels a reversal; the mere fact that the record may support a contrary conclusion is not enough to justify a reversal of the administrative findings." Adefemi v. Ashcroft, 386 F.3d 1022, 1027 (11th Cir. 2004)(en banc), cert. denied, 544 U.S. 1035 (2005).

It is, moreover, the function of the Commissioner, and not the courts, to resolve conflicts in the evidence and to assess the credibility of the witnesses. Grant v. Richardson, 445 F.2d 656 (5th Cir. 1971). Similarly, it is the responsibility of the Commissioner to draw inferences from the evidence, and those inferences are not to be overturned if they are supported by substantial evidence. Celebrezze v. O'Brient, 323 F.2d 989, 990 (5th Cir. 1963).

Therefore, in determining whether the Commissioner's decision is supported by substantial evidence, the court is not to reweigh the evidence, but is limited to determining whether the record as a whole contains sufficient

evidence to permit a reasonable mind to conclude that the claimant is not disabled. However, the court, in its review, must satisfy itself that the proper legal standards were applied and legal requirements were met. Lamb v. Bowen, 847 F.2d 698, 701 (11th Cir. 1988).

B. The Commissioner's regulations set out what is termed a "sequential" analysis for deciding disability claims. See 20 C.F.R. 404.1520, 416.920. The initial question is whether the plaintiff is engaged in substantial gainful activity because, if so, the plaintiff will be found not disabled. 20 C.F.R. 404.1520(b), 416.920(b). If not, the next inquiry (step two) is whether a claimant has a severe impairment. 20 C.F.R. 404.1520(c), 416.920(c). An impairment is not severe if it does not significantly limit a claimant's physical or mental abilities to do basic work activities. 20 C.F.R. 404.1521(a), 416.921(a). If there is not a severe impairment, then a claimant is deemed to be not disabled. 20 C.F.R. 404.1520(c), 416.920(c).

When an impairment is severe, the next inquiry is whether the claimant meets, or equals, a listing in Appendix 1 (step three). If so, the claimant is deemed disabled. 20 C.F.R. 404.1520(d), 416.920(d). If not, a further inquiry (step four) is made as to whether the impairment prevents the

claimant from doing past relevant work. 20 C.F.R. 404.1520(f), 416.920(f). If a claimant cannot do such work, an additional determination (step five) is made concerning whether the claimant can perform other work which exists in significant numbers in the national economy. 20 C.F.R. 404.1520(g), 416.920(g).

## III.

The plaintiff raises in his memorandum just one challenge to the law judge's decision. He contends that the law judge erred in finding that he does not meet, or equal, listing 12.05 B of Appendix 1. See 20 C.F.R. Part 404, Subpart P, App. 1 (2012).

A condition listed in Appendix 1 is considered so severe that a plaintiff who meets, or equals, a listing is deemed disabled without regard to vocational considerations. Wilkinson o/b/o Wilkinson v. Bowen, 847 F.2d 660, 662 (11th Cir. 1987). The plaintiff bears the burden of showing that he meets, or equals, a listing. McSwain v. Bowen, 814 F.2d 617, 619 (11th Cir. 1987). Moreover, "when a claimant contends that he has an impairment meeting the listed impairments entitling him to an adjudication of disability under regulation 404.1520(d), he must present specific medical findings that

meet the various tests listed under the description of the applicable impairment or, if in the alternative he contends that he has an impairment which is equal to one of the listed impairments, the claimant must present medical evidence which describes how the impairment has such an equivalency." Bell v. Bowen, 796 F.2d 1350, 1353 (11th Cir. 1986).

As indicated, the plaintiff contends that he meets listing 12.05 B of Appendix 1. That listing states:

> 12.05 *Mental Retardation*: Mental retardation refers to significantly subaverage general intellectual functioning with deficits in adaptive functioning initially manifested during the developmental period; *i.e.*, the evidence demonstrates or supports onset of the impairment before age 22.
>
> The required level of severity for this disorder is met when the requirements in A, B, C, or D are satisfied.
>
> . . .
>
> B. A valid verbal, performance, or full scale IQ of 59 or less; . . .

The plaintiff's IQ test results were a verbal scale IQ of 57, a performance scale IQ of 68, and a full scale IQ of 58 (Tr. 194). Appendix 1 directs that, where more than one score is obtained, the lowest of them is to

be used in conjunction with listing 12.05. See App. 1, 12.00 D6c. Here, the plaintiff's full scale IQ of 58 and verbal scale IQ of 57, on their face, appear to meet the IQ criterion of listing 12.05 B.

However, the law judge concluded that the full scale IQ of 58 and the verbal scale IQ of 57 are not valid scores. Thus, the law judge stated: "Turning to the requirements in paragraph B, they are not met because the claimant does not have a valid verbal, performance, or full scale IQ of 59 or less. (See the above statement)" (Tr. 32). "[T]he above statement," which explained the rejection of paragraph A, stated (id.):

> In this case, these requirements are not met because the claimant is functioning inclusive of doing ADL independently. His father had a stroke and he was able to take care of him. He has a driver's license since age 18, which tends to indicate he understands and follows the complex traffic codes. He also goes out at times and drives independently to about 1/4 mile distance to the store by himself. He also understands rules of baseball and basketball games, which he also plays.

The incorporation of this statement with respect to paragraph B not only establishes that the law judge was concluding that the IQ scores of 58 and 57 were not valid, but provided his grounds for that conclusion.

Those reasons, moreover, provided an adequate basis for concluding that the IQ scores were not valid.

This conclusion, in addition, is supported by substantial evidence. The IQ scores were obtained by Dr. Gerald Mussenden, a psychologist who administered the intelligence test. As the law judge expressly noted (Tr. 35), Dr. Mussenden commented that, "given the fact that [the plaintiff] does have a driver's license and has good verbalization and interaction with the examiner it would appear that [the plaintiff] is a high functioning mildly retarded individual" (Tr. 194). Dr. Mussenden added, "This means that he is capable of performing some mild vocational skills" (id.). Accordingly, he recommended that the plaintiff be referred "to vocational rehabilitation for minimal vocational training and minimal employability" (Tr. 196).

The law judge's finding that the IQ scores are not valid is supported further by the opinions of two nonexamining reviewing psychologists. Dr. Martha Putney, a psychologist, filled out a Psychiatric Review Technique form which indicated that the plaintiff did not meet, or equal, a listed impairment. Thus, at the beginning she did not check the

spaces for meeting, or equaling, a listed impairment (Tr. 201). Further, with respect to the listing of 12.05 for Mental Retardation, she did not mark the space for "a valid verbal, performance, or full scale IQ of 59 or less" (Tr. 205). She considered it noteworthy that, "unlike most individuals with mild [mental retardation] IQ scores, this [claimant] is able to drive" (Tr. 213).

Another psychologist, Dr. Arthur Hamlin, also filled out a Psychiatric Review Technique form. Like Dr. Putney, he did not check the spaces at the beginning of the form indicating that the plaintiff met, or equaled, a listed impairment (Tr. 225). He also did not mark the space in "12.05 Mental Retardation" for "a valid verbal, performance, or full scale IQ of 59 or less" (Tr. 229). He did mark that the plaintiff had "a valid verbal, performance, or full scale IQ of 60 through 70," which corresponds to listing 12.05 D (id.). However, he concluded that the plaintiff did not meet, or equal, listing 12.05 D either, because the plaintiff did not have the marked functional limitations that are needed to satisfy that listing.

In sum, the law judge found that the plaintiff did not meet, or equal, listing 12.05 B because he did not have a valid IQ score of 59 or less.

That finding is supported by substantial evidence. Consequently, the plaintiff's sole challenge to the law judge's decision fails.

In addition, the Commissioner persuasively argues that the plaintiff has not shown deficits in adaptive functioning, which is also a requirement of listing 12.05 (Doc. 17, pp. 6-7). In order to meet listing 12.05, the plaintiff has to demonstrate not only that he has a qualifying IQ score, but also that he has "deficits in adaptive functioning initially manifested during the developmental period." Accordingly, in Crayton v. Callahan, 120 F.3d 1217, 1219 (11th Cir. 1997) (emphasis added), the court said that, "[t]o be considered for disability benefits under section 12.05, a claimant must at least (1) have significantly subaverage general intellectual functioning; (2) have deficits in adaptive behavior; and (3) have manifested deficits in adaptive behavior before age 22."

The evidence does not establish deficits in adaptive behavior. Thus, the law judge stated (Tr. 36):

> The claimant is and has been an educable individual with learning disability and low IQ, but highly functioning inclusive for doing activities of daily living (ADL) independently. His father had a stroke and he was able to take care of his father.

> He has a driver's license since age 18, which tends to indicate he understands and follows the complex traffic rules. He also goes out at times and drives independently to about 1/4 mile distance to the store by himself. He also understands rules of baseball and basketball games, which he also plays.

Further, the Commissioner points out that the record shows that the "Plaintiff mowed the lawn, cared for pets, cleaned, shopped for groceries, and went fishing and to an amusement park" (Doc. 17, p. 7).

The plaintiff's failure to demonstrate deficits in adaptive behavior is an additional reason why the law judge did not err in finding that the plaintiff did not meet, or equal, listing 12.05 B.

It is, therefore, upon consideration

ORDERED:

That the decision of the Commissioner of Social Security is hereby AFFIRMED. The Clerk shall enter judgment in accordance with this Order and CLOSE this case.

DONE and ORDERED at Tampa, Florida, this 14th day of November, 2012.

THOMAS G. WILSON
UNITED STATES MAGISTRATE JUDGE